UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY | CIVIL ACTION |
| VERSUS | |
| R.E. JENKINS, INC., ET AL. | No. 14-504-BAJ-SCR |

RULING AND ORDER

Before the Court are Plaintiff American Contractors Indemnity Company's ("ACIC") **Motion for Summary Judgment (Doc. 19)** and **Motion for Confirmation of Default (Doc. 20)**. Pursuant to Federal Rule of Civil Procedure ("Rule") 56, ACIC seeks summary judgment against Defendant Tracy Middleton in the full sum of $138,862.98, plus all additional losses, costs, expenses, consulting fees, and attorney fees incurred by ACIC as a result of ACIC having issued bonds to the Defendants. Pursuant to Rule 55(b)(1), ACIC also seeks the Court's entry of a default judgment against Defendant R.E. Jenkins, Inc. ("R.E. Jenkins"). Neither defendant has opposed either motion. Oral argument is not necessary. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. For the reasons stated below, both motions are **GRANTED**.

I. BACKGROUND

A. ACIC's Allegations

ACIC alleges that on April 22, 2009, Middleton, along with Charles K. Middleton, her husband, and Kenneth W. Kendrick, executed a General Indemnity

1

Agreement (the "Indemnity Agreement") in order to induce ACIC to issue surety bonds for R.E. Jenkins.[1] (Doc. 19-3). In reliance on the Indemnity Agreement, ACIC avers it issued bonds for two contracts for R.E. Jenkins. (*Id.*).

### 1. *The Fontainebleau Project Bonds*

The first bonds issued were in connection with a project for the construction of classrooms for Fontainebleau Jr. High School (the "Fontainebleau Project") where the St. Tammany Parish School Board entered into a contract with Polk Construction Corporation ("Polk"). (Doc. 19-2 at ¶¶ 1, 2, 6). Polk, as contractor, entered into a subcontract agreement (the "Fontainebleau Subcontract") with R.E. Jenkins, as subcontractor, to provide labor and materials for the heating, ventilation, and air conditioning ("HVAC") system on the Fontainebleau Project. (*Id.*)

R.E. Jenkins applied to ACIC to issue a payment bond[2] and performance bond[3] for the Fontainebleau Subcontract. (*Id.* at ¶ 7). In response to R.E. Jenkins's application, and in reliance on the Indemnity Agreement executed by Middleton, ACIC issued a subcontract payment bond and a subcontract performance bond (the "Fontainebleau Bonds") with Polk as obligee and R.E. Jenkins as principal. (Doc. 19-4). Thereafter, R.E. Jenkins issued certain purchase orders (the "Purchase Orders") to Trane U.S., Inc. ("Trane") to provide HVAC equipment for the Fontainebleau Project. (Doc. 19-2 at ¶ 9). On August 26, 2011, Trane filed a Concursus Petition in Summary Proceeding, alleging that it did not receive full payment for said services. (*Id.* at ¶ 12).

---

[1] Charles K. Middleton and Kenneth W. Kendrick have since been discharged in bankruptcy.

[2] A "payment bond" is "a bond conditioned upon the payment by the principal of money to persons under contract with him." 15 U.S.C. § 694a(2).

[3] A "performance bond" is "a bond conditioned upon the completion by the principal of a contract in accordance with its terms." 15 U.S.C. § 694a(3).

2

After adjustment and credit for amounts recovered, the total losses, costs, and expenses, including attorneys' fees and consulting fees, incurred by ACIC as a result of the Fontainebleau Bonds having been issued is $138,187.98 (*Id.* at ¶¶ 13-17).

   2.   *The Progress Road Headstart Center Bond*

The second bond was issued was in connection with a project in which the City of Baton Rouge and the Parish of East Baton Rouge ("Baton Rouge"), as owner, and R.E. Jenkins, Inc., as contractor, entered into a contract for the construction of a project referred to as the "HVAC Replacement for the Progress Road Headstart Center." (Doc. 19-2 at ¶¶ 3, 18). R.E. Jenkins applied to ACIC to issue a payment and performance bond for this contract. (*Id.* at ¶ 19). In response to R.E. Jenkins's application and in reliance on the Indemnity Agreement executed by Middleton, ACIC issued a performance and payment bond (the "Progress Road Headstart Center Bond") with Baton Rouge as obligee and R.E. Jenkins as principal. (Doc. 19-10). Subsequently, ACIC received a claim on the Progress Road Headstart Center Bond. (Doc. 19-2 at ¶ 21). ACIC incurred total losses, costs, and expenses, including attorneys' fees, of $675.00 as a result of issuing the Project Road Headstart Center Bond. (*Id.* at ¶ 23).

### B.  Procedural History

ACIC filed its Complaint against Middleton and R.E. Jenkins on August 13, 2014. (Doc. 1). The record indicates that R.E. Jenkins was properly served on

3

September 12, 2014 (Doc. 6), and Middleton was properly served on October 4, 2014 (Doc. 7).[4] Middleton filed an Answer on December 10, 2014. (Doc. 14).

However, R.E. Jenkins failed to file an Answer to the Complaint or a motion by the twenty-one day deadline outlined in Rule 12; nor did R.E. Jenkins request an extension of time to file an Answer or motion under Rule 12. Indeed, it is uncontested that R.E. Jenkins has not yet filed any documents in this action. As such, ACIC moved for a Clerk's entry of default against R.E. Jenkins on December 10, 2014. (Docs. 15, 16). The Clerk granted the entry of default on December 11, 2014. (Doc. 17).[5] ACIC filed the motions here, including the affidavit showing the amount due and supporting documentation, on February 26, 2015. (Docs. 19, 20).

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

---

[4] The summons for both Middleton and R.E. Jenkins were returned executed on October 6, 2014. (Docs. 6, 7).

[5] The Clerk's Order notifying R.E. Jenkins of the entry of default was returned on January 5, 2015 with a letter for the Louisiana Secretary of State noting that the Order was returned as "not deliverable as addressed." (Doc. 18).

4

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### B. Motion for Default Judgment

The United States Court of Appeals for the Fifth Circuit has outlined a three step process to obtain a default judgment: (1) a defendant's default; (2) a clerk's entry

of default; and (3) a plaintiff's application for a default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The service of summons or lawful process triggers the duty to respond to a complaint. *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D. La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)). A defendant's failure to timely plead or otherwise respond to the complaint triggers a default. *N.Y. Life Ins. Co.*, 84 F.3d at 141. Rule 55 then provides that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . . ." Fed. R. Civ. P. 55(a).

Once the Clerk of Court has found a defendant to be in default, the plaintiff may move for a default judgment against the defaulting defendant.[6] Fed. R. Civ. P. 55(b). Under Rule 55(b), there are two methods by which a plaintiff may obtain the entry of a default judgment. *Id.* The plaintiff may apply to the Clerk of Court for the default judgment if (1) the defendant has defaulted by failing to appear, (2) the defendant is neither an infant nor an incompetent person, and (3) the plaintiff's claim is for a sum made certain by computation. Fed. R. Civ. P. 55(b)(1); *Receivables Exch., LLC v. Advanced Tech. Servs., Inc.*, No. 14-668, 2014 WL 5782849, at *1 (E.D. La. Nov. 6, 2014). "A sum is certain when the amount claimed is a liquidated one or is one that is capable of mathematical calculation as, for example, an action on a promissory note." *See, e.g., U.S. v. Giles*, 538 F.Supp.2d 990 (W.D.Tex. 2008). "Mere statements of award

---

[6] Under the Local Rules of the United States District Court for the Middle District of Louisiana, a judgment of default can be entered no sooner than fourteen days after the Clerk' of Court's entry of default. L.R. 55. Here, more than fourteen days have passed since the Clerk of Court found Defendants in default. (Doc. 17.)

6

values without any indication of how those amounts were reached cannot rise to the level of an amount liquidated or capable of mathematical calculation." *Richardson v. Salvation Army,* 161 F.3d 7, 1998 WL 723820 at *1 (5th Cir. 1998). Otherwise, the district court must enter the judgment. Fed. R. Civ. P. 55(b)(2).

Default judgments are "generally disfavored in the law" in favor of a trial upon the merits. *Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council,* 726 F.2d 166, 168 (5th Cir. 1984)). Default judgments are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations . . . . [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive party.'" *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F. 2d 689, 691 (D.C. Cir. 1970)). This policy however, is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (internal citations omitted). In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir. 1996); *see also Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). While "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," the Court retains the obligation to determine whether those facts state a claim upon

7

which relief may be granted. *Nishimatsu Constr. Co.*, 515 F.2d at 1206; *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (affirming the district court's denial of a default judgment because, even if the plaintiff's factual allegations were found to be true, the defendants would not have been liable under the law).

## III. ANALYSIS

### A. Motion for Summary Judgment

#### 1. *The Indemnity Agreement*

ACIC moves the Court to enforce the Indemnity Agreement. The Fifth Circuit has recognized that an indemnity contract is the law between the parties and must be interpreted in accordance with its terms and conditions. *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 627 (5th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994) (citing *Commercial Union Ins. Co. v. Melikyan*, 430 So.2d 1217, 1221 (La. App. 1 Cir. 1983)). In an indemnity contract, "the principal and indemnitors can be bound to the surety in any manner they elect in consideration of the surety issuing the bond covering the principal obligation." *Abbott*, 2 F.3d at 627. Further, the terms, provisions, and conditions of a contract of indemnity "will be enforced as written unless they run counter to law or violate well-defined public policy or good morals." *Fidelity & Deposit Co. of Maryland v. Thieme*, 193 So. 496, 497 (La. App. 2 Cir. 1940); *see also Mills v. Fidelity & Cas. Co. of N.Y.*, 226 F.Supp. 786, 790 (W.D. La. 1964), *aff'd*, 338 F.2d 341 (5th Cir. 1964). In executing the Indemnity Agreement in favor of ACIC, Middleton agreed to the following:

> In consideration of the execution and delivery by the Surety [ACIC] of a Bond or any Bonds on behalf of Principal [R.E. Jenkins], the Undersigned agree to indemnify and hold the Surety harmless from and against any

8

and all demands, liabilities, losses, costs, damages, attorneys' fees, and expenses of whatever kind or nature together with the interest thereon at the maximum rate allowed by law, which arise by reason of, or in consequences of, the execution by the Surety of any Bond on behalf of the Principal. . .

(Doc. 19-3 at p. 1). Additionally, Middleton signed this Indemnity Agreement as an individual agreeing to be solidarily bound for the full amount. (*See id.* at p. 4).

The Louisiana Civil Code provides that "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." La. Civ. Code art. 1794. However, "[s]olidarity of an obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." La. Civ. Code art. 1796. The Indemnity Agreement provided that "[t]he obligations of the Undersigned hereunder are joint and several." (Doc. 19-3 at p. 4). "A solidary obligation is 'analogous to common-law joint and several obligations,' as it 'binds each of two or more debtors for the entire performance at the option of the creditor.'" *Kelly v. Scottsdale Ins. Co.*, 465 Fed. App'x 296, 298 (5th Cir. 2012) (citing Black's Law Dictionary 1181 (9th ed.2009)). As the Indemnity Agreement clearly expressed the parties' intent to be solidarily bound and liable for the entire amount, Plaintiff ACIC is entitled to recover the full sum of $138,862.98 against Defendant Middleton.

2. *The Effect of the Bankruptcy Discharge*

Defendant Middleton asserts in her Answer that she is protected from this action because her husband, Charles K. Middleton, was granted discharge of this debt after filing for Chapter 7 Bankruptcy. (Doc. 14). However, this argument is without

9

merit. Middleton and her husband each signed the Indemnity Agreement as individuals and, as result, agreed to be solidarily bound by its terms and conditions. (Doc. 9-3 at p. 6-7). The Louisiana Civil Code provides that "[a] loss arising from the insolvency of a solidary obligor must be borne by the other solidary obligors in proportion to their portion." La. Civ. Code art. 1806. Charles Middleton's bankruptcy filing demonstrates that he filed for bankruptcy individually and did not list Middleton as a co-debtor on his debt to ACIC.[7] Federal law precludes the collection of a debt against the discharged debtor and his community property. 11 U.S.C. § 524(a)(3). However, this does not discharge the non-filing spouse's separate property.[8] Courts have recognized that bankruptcy does not extend the effect of the filing spouse's discharge to the separate property of the non-filing spouse. *In re Dyson*, 277 B.R. 84, 95 (Bankr. M.D. La. 2002).[9] Even viewing the facts in a light most

---

[7] Charles K. Middleton's Chapter 7 Bankruptcy Summary of Schedules Form (Doc. 21 at p. 16); *see also* Schedule H-Codebtors (*Id.* at p. 33) (Tracy Middleton is not listed as a co-debtor).

[8] 11 U.S.C. § 524(a)(3) provides, in relevant part: "(a) A discharge in a case under this title-- (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived." *See In re Dyson*, 277 B.R. 84, 95 (Bankr. M.D. La. 2002) (applying Section 1328(a) to conclude that the non-filing spouses separate property is not protected by community property discharge).

[9] "As for Mrs. Dyson, § 1328(a) does not purport to extend the effect of the filing spouse's discharge to the separate property of the non-filing spouse, because she is not a debtor. Her separate property is subject to collection efforts free of the effect of Mr. Dyson's discharge, should there be one." *In re Dyson*, 277 B.R. at 95. *See also Matter of Kastner*, 197 B.R. 620, 624 (Bankr. E.D. La. 1996) ("[A]lthough the court's judgment may reach the community property of Mr. and Mrs. Kastner, the court may not adjudicate the nondischargeability of the Commissioner's claims against Mr. Kastner to the extent of his separate property. Because Mr. Kastner has not filed for bankruptcy protection, the automatic stay provided by 11 U.S.C. § 362 is not applicable to him with respect to his separate property, and the Commissioner may proceed against Mr. Kastner in state court.").

favorable to Middleton, her separate property cannot be protected from this action. Consequently, ACIC is entitled to summary judgment in the amount of $138,862.98 collectable against Middleton's separate property.

### B. Motion for Default Judgment

ACIC also asks this Court to enter a default judgment against Defendant R.E. Jenkins. As a principal on the Indemnity Agreement, R.E. Jenkins is also bound to ACIC as a solidary obligor. *See Abbott*, 2 F.3d at 627; (Doc. 1-1 at p. 6); discussion *infra* Part III(A)(i).

Even so, a review of the record reveals that R.E. Jenkins has failed to file any responsive pleadings, as required by Rule 12. Nor has R.E. Jenkins attempted to file responsive pleadings or a response to the Clerk of Court's entry of default. Further, R.E. Jenkins did not file an opposition to Plaintiff's Motion for Default Judgment. Therefore, the entry of a default judgment against R.E. Jenkins is proper.

## IV. CONCLUSION

In sum, ACIC incurred a total loss of $138,862.98 due to its issue of the Fontainebleau Project and Progress Road Headstart Center bonds. ACIC seeks summary judgment against Middleton for the full sum, and a default judgment against R.E. Jenkins. ACIC's motions detail the amount due and are supported by affidavits and additional documentation. For the foregoing reasons, Plaintiff ACIC is entitled to judgment in its favor and against Defendants R.E. Jenkins and Middleton, *in solido*, for the full amount of $138,862.98.

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Doc. 19)** is **GRANTED** against Defendant Tracy Middleton.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion for Confirmation of Default** is **GRANTED**, and a **DEFAULT JUDGMENT** is **ENTERED** in favor of ACIC, and against Defendant R.E. Jenkins, pursuant to Federal Rule of Civil Procedure 55(b)(1).

Baton Rouge, Louisiana, this ___8th___ day of May, 2015.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**